UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:13-cv-00669-CAS(JCx) | Date | January 8, 2017 |
|---|---|---|---|
| Title | MARCELO HERNANDEZ-ROJAS v. M. K. PINNELL, ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | | |
|---|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Kevin Conlogue | Keith Staub, AUSA |
| Garbriel Avina | |

**Proceedings:** DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Dkt. 151, filed November 3, 2017)

## I. INTRODUCTION

On February 12, 2013, plaintiff Marcelo Hernandez-Rojas, also known as Victor Manuel Gonzalez Oseguera, ("plaintiff") filed this civil rights action pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971) alleging that medical personnel at the Federal Correctional Institution in Lompoc, California ("FCI Lompoc") exhibited deliberate indifference to plaintiff's serious medical needs in violation of his Eighth Amendment rights by failing to treat his peripheral vascular disease ("PVD"), which resulted in the amputation of his right leg. Dkts. 3, 4.

On October 21, 2015, plaintiff filed the operative third amended complaint against the United States of America, Dr. Jaspal Dhaliwal ("Dr. Dhaliwal"), Oscar Salcido ("Salcido"), Dr. Mahesh Patel ("Dr. Patel"), Marsha Pinnell ("Pinnell"), Luis Colcol, Jr. ("Colcol"), Joyce Hawley ("Hawley"), Dr. Tennille Warren-Phillips ("Dr. Warren-Phillips"), Manuel Valencia ("Valencia"), Simone Garcia ("Garcia"), and Dr. Lawrence S. Riemer ("Dr. Riemer"). Dkt. 77 ("TAC"). The complaint asserts the following three claims: (1) a Bivens claim for violation of plaintiff's Eighth Amendment rights against individual federal defendants Dr. Dhaliwal, Salcido, Dr. Patel, Pinnell, Colcol, Hawley, Dr. Warren-Phillips, Valencia, and Garcia; (2) a negligence claim pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2672, et seq., against all defendants except Dr. Riemer; and (3) a professional negligence claim against Dr. Riemer.[1]

---

[1] Dr. Riemer, a private physician at the Lompoc Valley Medical Center, was voluntarily dismissed pursuant to the parties' stipulation. Dkt. 124. The parties also

| | | | |
|---|---|---|---|
| | **CIVIL MINUTES – GENERAL** | | **'O'** |
| Case No. | 2:13-cv-00669-CAS(JCx) | Date | January 8, 2017 |
| Title | MARCELO HERNANDEZ-ROJAS v. M. K. PINNELL, ET AL. | | |

On November 3, 2017, the remaining individual federal defendants, Dr. Dhaliwal, Salcido, Dr. Patel, Pinnell, Colcol, Hawley, and Dr. Warren-Phillips (hereafter, "defendants"), filed the above-captioned motion for summary judgment with respect to plaintiff's Bivens claim. Dkt. 151 ("Mot."). On November 24, 2017, plaintiff filed an opposition, dkt. 154 ("Opp'n"); and defendants filed a reply on December 8, 2017, dkt. 158 ("Reply"). The Court held a hearing on January 8, 2017. Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II. BACKGROUND

The following facts—taken from plaintiff's medical records, the parties' deposition testimony, plaintiff's sworn declaration, and plaintiff's expert report—are undisputed unless otherwise noted.[2]

On February 11, 2010, plaintiff was incarcerated at FCI Sherdian in Oregon and was seen a physician assistant for complaints of leg pain. Plaintiff indicated that he had been diagnosed with erythema nodosum. Dkt. 152, Defendants' Appendix ("App'x"), Ex. 1 at 2. On March 30, 2010, Dr. Dhaliwal examined plaintiff for pain, scarring, itching, and burning on his right leg. Id. at 8–10. On August 2, 2010, plaintiff visited a

---

stipulated to the dismissal of individual federal defendants Valencia and Garcia. Dkt. 146. Plaintiff's FTCA claim is not the subject of the instant motion.

[2] Defendants' Statement of Uncontroverted Facts and Conclusions of Law includes factual assertions regarding plaintiff's medical treatment for gastrointestinal and mental health issues that are not related to his PVD. See Dkt. 151-1. Plaintiff's Statement of Genuine Disputes of Material Fact does not meaningfully dispute many of defendants' factual assertions but rather asserts additional material facts in rebuttal. See Dkt. 155. For this reason, the Court has thoroughly reviewed the record to determine which facts are undisputed and relevant for the purpose of deciding this motion.

On January 5, 2018, plaintiff filed ten motions in limine seeking to exclude evidence of plaintiff's citizenship status, purportedly incorrect dates of birth and aliases, smoking and illicit drug use, criminal record, use of public transportation, purported self-inflicted wounds, and mental health issues. Dkts. 159–167. The Court does not rely on the evidence that is the subject of these motions.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:13-cv-00669-CAS(JCx) | Date | January 8, 2017 |
| Title | MARCELO HERNANDEZ-ROJAS v. M. K. PINNELL, ET AL. | | |

dermatologist who diagnosed atypical erythema nodosum and noted that plaintiff complained of significant pain. Id. at 12. Plaintiff saw a psychiatrist on November 20, 2011, who noted that plaintiff complained of lower extremity pain and was concerned that it might be something other than erythema nodosum. Id. at 13–16.

On December 19, 2011, a nurse performed an initial health screening when plaintiff arrived at FCI Lompoc, noting his complaint of leg pain and continuing his prescription for pain relievers. Dkt. 157, Declaration of Kevin S. Conlogue ("Conlogue Decl."), Ex. 34. On December 22, 2011, plaintiff wrote a letter to Dr. Dhaliwal stating that he was experiencing severe pain, particularly at night, bruises and bumps were developing on his feet, and he could not walk or stand for extended periods. Id., Ex. 35. He explains that although a dermatologist in Oregon had diagnosed erythema nodosum, another doctor explained that this condition does not last more than two and half years. Plaintiff stated he believed his illness was not erythema nodosum. Id. On December 28, 2011, Dr. Dhaliwal examined plaintiff, diagnosed erythema nodosum and varicose veins, and ordered a dermatologist consultation. Plaintiff complained of a "lot of pain" and was not satisfied with his treatment and diagnosis. App'x, Ex. 1 at 27. Plaintiff was not examined by a dermatologist until October 24, 2012, approximately ten months later. Conlogue Decl., Ex. 17.

On January 19, 2012, Dr. Dhaliwal examined plaintiff who requested different shoes because of discomfort. App'x, Ex. 1 at 35. Dr. Dhaliwal noted that plaintiff had tenderness, normal dorsalis pedis pulse, and ordered ankle x-rays. Id; Ex. 4 at 97–98. Plaintiff states that in January 2012 he repeatedly complained to Dr. Dhaliwal that he had leg and foot pain that made it difficult for him to walk, but Dr. Dhaliwal ignored his complaints and told him it was not an emergency. Hernandez-Rojas Decl. ¶ 5. On February 16, 2012, plaintiff was examined by Dr. Leonardo Giron for complaints of pain along his heels and calves. App'x, Ex. 1 at 40. Dr. Giron found plaintiff's dorsalis pedis pulses diminished and diagnosed him with PVD. Id. Dr. Giron noted that plaintiff was told by two dermatologists that he had erythema nodosum and counseled plaintiff that erythema nodosum is not a diagnosis but rather a sign of other diseases. Id.

On March 1, 2012, Salcido, a Mid-Level Practitioner at FCI Lompoc, noted that plaintiff was at sick call requesting a change of medication, but did not recall the clinical encounter in deposition. Id. at 43; Conlogue Decl., Ex. D at 67–71. Plaintiff states that after being seen by Salcido, plaintiff complained to Dr. Patel, FCI Lompoc's Health Service Administrator, that Salcido had ignored his complaints of foot pain; and Dr. Patel had to ensure that plaintiff saw Dr. Giron for treatment. Hernandez-Rojas Decl. ¶ 6.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:13-cv-00669-CAS(JCx) | Date | January 8, 2017 |
| Title | MARCELO HERNANDEZ-ROJAS v. M. K. PINNELL, ET AL. | | |

Plaintiff was examined by Dr. Giron that afternoon. Conlogue Decl., Ex. 72. On March 20, 2012, Salcido saw plaintiff at sick call and reported that plaintiff did not voice any medical complaints. App'x, Ex. 1 at 45–46. Plaintiff states that throughout March 2012, Salcido refused to treat him at sick call and would turn him away even though plaintiff repeatedly complained of extreme leg and foot pain that was making it difficult for him to walk. Hernandez-Rojas Decl. ¶ 7.

On March 22, 2012, Dr. Warren-Phillips, a psychiatrist, evaluated plaintiff's mental health after encountering him looking tense and agitated. Plaintiff was upset about his leg pain and being on the wait-list to see a dermatologist, indicating that he had already seen two dermatologists and believed that he needed to see another specialist to resolve the problem. App'x, Ex. 1 at 47. On March 23, 2012, Salcido noted that plaintiff had complained about not getting his pain medication and notified the pharmacy to refill his prescription. Id. at 48. Plaintiff states that he went to Salcido regarding his leg and foot pain and requested to see a specialist, but was ignored. Hernandez-Rojas Decl. ¶ 8.

On April 2, 2012, plaintiff submitted an inmate request to staff because of the ongoing pain in his feet and delayed medical appointment. Dr. Dhaliwal reviewed the request and responded that plaintiff should sign in for sick call. Conlogue Decl., Ex. 41, Ex. C at 103–05. On April 19, 2012, plaintiff requested "immediate medical attention as the pain is getting worse." Id., Ex. 42. On April 22, 2012, plaintiff filed an administrative remedy request, indicating that he has "been to sick call many times without any results," that he was in "daily pain" and receiving no medical help. Id., Ex. 43. Plaintiff stated that his feet were red, swollen, and bruised and that he could not walk very well, and that his pain level was 10 out of 10. Id. On June 6, 2012, the FCI Lompoc's Warden responded to plaintiff's request, in a document drafted by Dr. Patel, stating that his "medical needs are being addressed." Conlogue Decl., Ex. 44, Ex. F at 67. On June 22, 2012, plaintiff filed an administrative appeal. Id., Ex. 45.

Plaintiff states that the pain medication provided by Salcido was not helping and did not prevent his legs from swelling and bruising. Hernandez-Rojas Decl. ¶ 10. On July 3, 2012, Salcido saw plaintiff at sick call, refilled his medications, and reported that plaintiff had "no medical complaints voiced." Conlogue Decl., Ex. 77. Plaintiff states that Salcido refused to examine him. Hernandez-Rojas Decl. ¶ 11. Plaintiff states that on July 6, 2012, Salcido refused to see him at sick call for his extreme leg and foot pain, and that he had to get a prison guard to force Salcido to examine him. Hernandez-Rojas Decl. ¶ 11. Salcido reported that plaintiff had varicose veins, femoral, popliteal, pedial pulses of "+5," and recommended elevating his legs, wearing compression socks, and avoiding

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:13-cv-00669-CAS(JCx) | Date | January 8, 2017 |
| Title | MARCELO HERNANDEZ-ROJAS v. M. K. PINNELL, ET AL. | | |

prolonged standing. Plaintiff's request for a lower bunk was denied. Conlogue Decl., Ex. 78. On July 13, 2012, plaintiff attended sick call complaining of pain and burning in both feet. Dr. Dhaliwal told plaintiff he had erythema nodosum and was scheduled to see a dermatologist. App'x, Ex. 1 at 74. He found a normal femoral and dorsalis pedis pulse but a diminished posterior tibialis pulse, and diagnosed varicose veins with darkening of the skin. Id. at 75.

On July 23, 2012, Nurse Pinnell and Salcido submitted incident reports.[3] Pinnell noted that plaintiff arrived at health services and stated that he had a psychology appointment, but left before staff arrived. About 20 minutes later, a guard found plaintiff sitting on floor stating that he could not walk because of foot pain. The guard returned him to health services in a wheelchair. Pinnell noted that plaintiff was able to bear weight on his legs and had just walked between housing units. Pinnell wrote him up for refusing to obey an order, malingering, and lying. Id. at 77. Salcido noted that plaintiff had been reporting to health services on a daily basis without an appointment was therefore "out of bounds." Id. at 79. Plaintiff subsequently filed an inmate request voicing his complaints of "intolerable" pain and inability to walk. Conlogue Decl., Ex. 30. He stated he had bruises and bumps on his feet and wanted to see a specialist. Id. Plaintiff states that he visited sick call for months to get help for his pain, only to be turned away by Salcido and yelled at by Pinnell. Hernandez-Rojas Decl. ¶ 12.

Plaintiff states that in August 2012 he developed black and purple discolorations, bruises, and "deep holes" on his right leg and foot. Plaintiff tried to show Salcido these injuries, but Salcido refused to examine plaintiff at sick call. Hernandez-Rojas Decl. ¶ 13. On August 10, 2012, plaintiff was seen by Salcido at the request of Dr. Patel and Assistant Health Services Administrator Colcol. Salcido noted that plaintiff was belligerent, hostile, and believed that his diagnoses were wrong. App'x, Ex. 1 at 82. On August 20, 2012, Salcido reported that plaintiff was seen at sick call with "no medical complaints voiced" but did not recall at deposition whether he examined plaintiff. Id. at 82; Conlogue Decl., Ex. D at 114–15. On August 31, 2012, Dr. Warren-Phillips saw plaintiff for a mental health evaluation. Plaintiff complained of leg and foot pain and

---

[3] The parties submit different versions of these reports. Compare App'x, Ex. 1 at 77–78 with Conlogue Decl., Exs. 28, 29. Plaintiff's version includes his own handwritten comments the disciplinary committee's notes on its decision to discipline plaintiff. The parties characterize the reports differently but do not appear to dispute the underlying events. See Mot. at 9–10; Opp'n at 7–8.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| Case No. | 2:13-cv-00669-CAS(JCx) | Date | January 8, 2017 |
|---|---|---|---|
| Title | MARCELO HERNANDEZ-ROJAS v. M. K. PINNELL, ET AL. | | |

estimated the pain to be a 10 on a scale of 1 to 10. She referred plaintiff to Dr. Dhaliwal for further treatment. App'x, Ex. 1 at 84.

On September 7, 2012, Dr. Dhaliwal noted that plaintiff had idiopathic peripheral neuropathy in his legs and prescribed pain medication. Id. at 85. Dr. Dhaliwal testified that he did not know the cause of plaintiff's pain and numbness; however, Dr. Dhaliwal stated he was aware that he had PVD. See Conlogue Decl., Ex. C at 121. On September 18, 2012, Salcido examined plaintiff at sick call, reported that plaintiff had "no medical complaints voiced" and appeared well. App'x, Ex. 1 at 85–86. Salcido did not recall whether he examined plaintiff's legs or feet. Conlogue Decl., Ex. D at 115–16. On September 21, 2012, plaintiff was offered a diabetic boot but declined because of pain on the back of his legs. App'x, Ex. 1 at 88.

On October 2, 2012, Dr. Dhaliwal examined plaintiff who complained of left knee pain and requested narcotics. Id. at 89. Plaintiff indicates that Dr. Dhaliwal created two clinical encounter notes on this date, and that the original but not the amended note indicates plaintiff had PVD. See Conlogue Decl., Exs. 48, 49. Dr. Dhaliwal did not explain why two notes were created at his deposition, but stated that he did not have to "mention everything again" in the amended note. Id., Ex. C at 123–24. On October 12, 2012, plaintiff visited Dr. Dhaliwal complaining of pain in his legs and requesting a wheelchair. App'x, Ex. 1 at 92. Dr. Dhaliwal's clinical note does not indicate that he checked plaintiff's leg pulses, and he could not recall in deposition whether any vascular tests were performed or needed to be performed. Conlogue Decl.,Ex. C at 133–34. Dr. Dhaliwal ordered plaintiff a cane, compression garment, but no wheelchair. App'x, Ex. 1 at 94.

On October 18, 2012 Salcido examined plaintiff at sick call, reported that he had "no medical complaints" and noted that he had asymptomatic varicose veins. Conlogue Decl., Ex. 87. Four days later, Salcido examined plaintiff who complained that his pain medication was not helping, and noted that plaintiff had PVD but needed to rule out vasculitis. Id., Ex. 88. Salcido could not recall at his deposition why his assessment changed or whether he had checked plaintiff's leg pulses. Id., Ex. D at 122–24.

On October 24, 2012, Dr. L. Van Meter performed the dermatologist consult that was ordered ten months previously, noting erythematous macules on plaintiff's right foot and lower leg. App'x, Ex. 1 at 99. According to plaintiff's vascular surgery expert, Dr. Wayne Gradman ("Dr. Gradman"), this condition is consistent with "extremely ischemic, possibly gangrenous tissue" due to PVD and is "irreversible." Conlogue Decl., Ex. A at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:13-cv-00669-CAS(JCx) | Date | January 8, 2017 |
| Title | MARCELO HERNANDEZ-ROJAS v. M. K. PINNELL, ET AL. | | |

30. Dr. Van Meter ordered a biopsy to rule out plaintiff's apparent diagnosis of atypical erythema nodosum. App'x, Ex. 1 at 99.

On October 25, 2012, Dr. Bandhit Sinkaset examined plaintiff and noted suspected erythema nodosum and PVD with ischemic pain, skin ulceration, intermittent claudication and rest pain. Dr. Sinkaset could not detect a popliteal or pedal pulse on either leg. Id. at 100. Plaintiff states that Dr. Sinkaset forced Nurse Hawley to check his pulse but she "refused to admit that there was no pulse." Hernandez-Rojas Decl. ¶ 15. Dr. Sinkaset recommended a biopsy and a non-invasive vascular study (a Doppler exam). App'x, Ex. 1 at 100. Plaintiff states that Dr. Sinkaset told Dr. Patel that plaintiff needed to see a vascular surgeon right away because of the ulcers, but Dr. Patel responded that it was not an emergency. Hernandez-Rojas Decl. ¶ 15. On October 26, 2012, Dr. Dhaliwal ordered a Doppler exam. Conlogue Decl., Ex. 54. Three days later, Dr. Dhaliwal reported that plaintiff's pain was better controlled and ordered him a wheelchair. App'x, Ex. 1 at 104. On November 2, 2012 Dr. Dhaliwal prescribed Oxycodone for plaintiff's leg pain. Id. at 105.

On November 6, 2012, Dr. Dhaliwal examined plaintiff who complained of pain and had swelling, redness, and erythema of the right foot. Dr. Dhaliwal diagnosed cellulitis and an abscess on one of his toes, prescribed antibiotics, and instructed plaintiff to return immediately if his condition worsened. App'x, Ex. 1 at 106–07. On November 9, 2012, Dr. Dhaliwal noted that plaintiff's cellulitis had improved but there were scars, crusts, and induration on his right foot. Id. at 110. He also noted that plaintiff was scheduled for a Doppler exam on November 19, 2012. Id. at 112. On November 13, 2012, Dr. Dhaliwal noted that plaintiff was doing better and had no complaints but approximately 20 minutes later transferred plaintiff to the emergency room at Lompoc Valley Medical Center for intravenous antibiotics. Conlogue Decl., Exs. 10, 59, 60.

On November 13, 2012, plaintiff was admitted at Lompoc Valley Medical Center and was examined by a nurse who noted that plaintiff's right ankle and the sole of his right foot were red and extremely painful and that his last three toes were "white-ish purple" color. Plaintiff said he had not slept in 10 days. App'x, Ex. 1 at 115. Dr. Reimer noted cellulitis on plaintiff's right leg, desquamation, and diminished pulses. Id. at 118. On November 14, 2012, a Doppler exam was performed showing mild obstructions to the lower extremities; and a MRI showed evidence of mild cellulitis. Id. at 120–22. Dr. Reimer concluded there was no significant obstruction to blood flow in plaintiff's right leg. Id., Ex. 9 at 153–57. However, on November 19, 2012, Dr. Michael Gill examined plaintiff and diagnosed impending gangrene of his right foot due to PVD. Dr. Gill

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:13-cv-00669-CAS(JCx) | Date | January 8, 2017 |
| Title | MARCELO HERNANDEZ-ROJAS v. M. K. PINNELL, ET AL. | | |

recommended revascularization surgery in an attempt to avoid amputation. Id., Ex. 1 at 123–25.

On November 20, 2012, plaintiff was referred to Marian Regional Medical Center with advanced necrosis of several toes on his right foot, ischemia, and impending limb loss. An angiographer unsuccessfully attempted to revascularize several occluded arteries in plaintiff's right leg using stents. Dr. Richard Moss, a vascular surgeon, explored the dorsalis pedis and posterior tibial arteries in plaintiff's right leg but the vessels were occluded and could not be used for a bypass. Because the doctors concluded that the right leg obstructions were irreversible, and given the advanced stage of plaintiff's gangrene, they performed a right below-the-knee amputation on November 30, 2012. Id., Ex. 1 at 131–32.

## III.  LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:13-cv-00669-CAS(JCx) | Date | January 8, 2017 |
| Title | MARCELO HERNANDEZ-ROJAS v. M. K. PINNELL, ET AL. | | |

574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

## IV. DISCUSSION

Defendants contend they are entitled to summary judgment because plaintiff fails to demonstrate their treatment was deliberately indifferent to his medical needs in violation of the Eighth Amendment. In addition, defendants assert that they entitled to qualified immunity because plaintiff cannot show they violated clearly established law. The Court addresses each argument below.

### A. Deliberate Indifference Standard

Under the applicable Eighth Amendment standard, a prisoner must demonstrate "deliberate indifference to serious medical needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)). This two-prong deliberate indifference standard includes both an objective and a subjective test. First, a prisoner must show a "serious medical need." Jett, 439 F.3d at 1096. A medical need is serious if "failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir.1992) (internal quotation marks and citation omitted), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc). Examples of serious medical needs include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." Id. at 1059–60.

Second, the plaintiff must show that the defendants' response to that need was deliberately indifferent. Jett, 439 F.3d at 1096. An official acts with deliberate indifference if he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). The plaintiff may rely on "circumstantial evidence when the facts are sufficient to demonstrate that a defendant actually knew of a risk of harm." Lolli v. Cnty. of Orange, 351 F.3d 410, 421 (9th Cir. 2003). Deliberate indifference "may appear when prison officials deny, delay, or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:13-cv-00669-CAS(JCx) | Date | January 8, 2017 |
| Title | MARCELO HERNANDEZ-ROJAS v. M. K. PINNELL, ET AL. | | |

provide medical care." Jett, 439 F.3d at 1096 (citation omitted). "A prisoner need not show his harm was substantial; however, [this] would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." Id. at 1096. A showing of "medical malpractice or negligence is insufficient to establish a constitutional deprivation." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). In cases in involving a difference of medical opinion, the plaintiff must show the course of treatment "was medically unacceptable under the circumstances," and was chosen "in conscious disregard of an excessive risk to [the prisoner's] health." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

### B. Application to Individual Defendants

As an initial matter, it appears defendants acknowledge that plaintiff's condition constituted a "serious medical need." Jett, 439 F.3d at 1096. Because plaintiff's PVD caused chronic and severe pain, limited his ability to walk, and ultimately resulted in ischemia, gangrene and amputation, the Court finds that plaintiff's illness constituted a serious medical need. See McGuckin, 974 F.2d at 1059–60. The dispositive question is therefore whether plaintiff has presented sufficient evidence such that a reasonable jury could find that defendants were deliberately indifferent to this need.

Without conceding negligence or medical malpractice, defendants contend that the evidence presented by plaintiff at most amounts to an allegation of negligence based on a misdiagnosis or a difference of medical opinion, which is insufficient to establish an Eighth Amendment violation. Mot. at 1; Reply at 2. Defendants maintain that plaintiff has not demonstrated a triable issue of fact showing any individual defendant's awareness that a substantial risk of serious harm existed; rather, defendants believed that plaintiff's leg pain was related to a skin disorder, erythema nodosum, which did not present an excessive risk to his health. Reply at 1. Defendants indicate that the following facts remain undisputed: plaintiff was seen by medical staff 46 times during the eleven-month period at issue, during which medications were prescribed, tests, examinations and consultations with specialists were ordered, and plaintiff was transferred to a hospital for medical treatment. Id. at 2. Given the amount of medical care provided to plaintiff, defendants contend that no reasonable jury could conclude that they were deliberately indifferent to his medical needs. Id. at 1.

In support of their position, defendants rely primarily on Estelle for the proposition that "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:13-cv-00669-CAS(JCx) | Date | January 8, 2017 |
| Title | MARCELO HERNANDEZ-ROJAS v. M. K. PINNELL, ET AL. | | |

Amendment." 429 U.S. at 106. However, the Supreme Court in Estelle also recognized that the medical treatment received by a prisoner can fall so far below the standard of care that the treatment itself manifests deliberate indifference. See id. at 105 & n. 10. The Ninth Circuit has also indicated that "poor medical treatment will at a certain point rise to the level of constitutional violation." Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990). The mere fact that defendants provided plaintiff with some form of medical treatment does not necessarily absolve them of all liability for their actions. See Lopez v. Smith, 203 F.3d 1122, 1132 (9th Cir. 2000) ("A prisoner need not prove that he was completely denied medical care.") (en banc).

In Ortiz v. City of Imperial, the Ninth Circuit recognized that a failure to competently treat a serious medical condition, even if some treatment is prescribed, may constitute deliberate indifference in a particular case. 884 F.2d 1312, 1314 (9th Cir. 1989). In Ortiz, the court reversed a grant of summary judgment in favor of defendants where the treating doctors were aware of evidence that the detainee had serious head trauma, but instead prescribed him sedatives to treat symptoms of alcohol withdrawal. Id. The court reiterated that "access to medical staff is meaningless unless that staff is competent and can render competent care." Id. (quoting Cabrales v. County of Los Angeles, 864 F.2d 1454, 1461 (9th Cir. 1988). The Ninth Circuit has also indicated that if prison's medical staff is not competent to examine, diagnose, and treat inmates' medical problems, they must "refer prisoners to others who can." Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982) abrogated in part on other grounds by Sandin v. Connor, 515 U.S. 472 (1995).

"Because vicarious liability is inapplicable" to Bivens actions, a government official "is only liable for his or her own misconduct." Ashcroft v. Iqbal, 556 U.S. 662, 676–77 (2009). Accordingly, plaintiff must show that each defendant, individually, was deliberately indifferent. The Court applies the foregoing principles to each individual defendant.

### 1. Dr. Dhaliwal

Defendants indicate it is undisputed that Dr. Dhaliwal treated plaintiff 12 times at FCI Lompoc, prescribed numerous medications, ordered various tests, assistive devices, and consultations with specialists, and ultimately sent plaintiff to the emergency room at the Lompoc Valley Medical Center. Reply at 3–4. Defendants argue that Dr. Dhaliwal cannot be held liable simply because he misdiagnosed plaintiff's condition and administered ineffective treatments because negligence, malpractice, or a mere difference

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:13-cv-00669-CAS(JCx) | Date | January 8, 2017 |
| Title | MARCELO HERNANDEZ-ROJAS v. M. K. PINNELL, ET AL. | | |

of medical opinion are insufficient to establish deliberate indifference as a matter of law. Id. at 4.

However, viewing the facts and drawing all reasonable inferences in plaintiff's favor as the non-moving party, the Court cannot say as a matter of law that Dr. Dhaliwal was not deliberately indifferent to plaintiff's serious medical needs. Although defendants characterize Dr. Dhaliwal's failure to treat plaintiff's PVD as a mere misdiagnosis of erythema nodosum, a reasonable juror could conclude from the evidence presented that Dr. Dhaliwal was in fact aware of plaintiff's PVD and failed to competently treat his condition. See Ortiz, 884 F.2d at 1314. Although Dr. Dhaliwal could not recall at his deposition whether and when he determined that plaintiff had PVD, see Conlogue Decl., Ex. C at 39, he appears to have known that plaintiff had the disease "for years," id. at 121. Moreover, Dr. Giron diagnosed PVD on February 16, 2012 and specifically noted in plaintiff's medical records that erythema nodosum is not a diagnosis but rather a sign of other diseases. App'x, Ex. 1 at 40. A subsequent record generated by Dr. Dhaliwal on October 2, 2012 indicates that plaintiff was being prescribed pain relievers for PVD. Conlogue Decl., Exs. 48, 49.

Plaintiff's medical expert, Dr. Gradman, opined that Dhaliwal's "inflexible diagnosis of erythema nodosum is irresponsible given that this disease never produces extreme pain of which this patient consistently complains." Id. Ex. 200 at 8. Dhaliwal's persistence in this diagnosis was "inexcusable" particularly since Dr. Giron correctly noted that "erythema nodosum is not a diagnosis but a sign of other pathology." Dr. Gradman states that the request for a dermatologist consultation was improper given that these specialists rarely evaluate disorders involving pain. Id. Dr. Gradman opines that Dhaliwal's treatment "definitely" fell below the standard of care because he does not understand the consequences of advanced arterial disease, has a limited understanding of PVD, his examinations were cursory, and he persisted in diagnoses without a basis. Id. at 8–9; Ex. A at 37–38. Accordingly, a reasonable jury could find that Dr. Dhaliwal's actions fell so far below the standard of care that the treatment itself manifested deliberate indifference.

In addition, based on the evidence presented, a reasonable jury may conclude that Dr. Dhaliwal "knew of a substantial risk from the very fact that the risk was obvious." Farmer, 511 U.S. at 842; see also Lolli, 351 F.3d at 421 (a plaintiff may rely on "circumstantial evidence when the facts are sufficient to demonstrate that a defendant actually knew of a risk of harm"). Dr. Dhaliwal examined plaintiff a dozen times between December 2011 and November 2012, during which plaintiff consistently

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:13-cv-00669-CAS(JCx) | Date | January 8, 2017 |
| Title | MARCELO HERNANDEZ-ROJAS v. M. K. PINNELL, ET AL. | | |

complained that he was experiencing severe pain and having difficulty walking. Plaintiff repeatedly requested to see a specialist, noted that his pain medication was ineffective, and explained that he thought the diagnosis of erythema nodosum was incorrect. Based on circumstantial evidence of plaintiff's worsening condition and ineffective treatment, a factfinder may property infer that Dr. Dhaliwal knew of a substantial risk of harm and exhibited deliberate indifference by failing to provide appropriate care.

Defendants rely on a recent unpublished Ninth Circuit opinion involving many of the same prison medical officials, including Dr. Dhaliwal. Reply at 3. In Bennett v. Dhaliwal, No. 15-56448, 2017 WL 6014232 (9th Cir. Dec. 5, 2017), the Ninth Circuit affirmed the district court's grant of summary judgment, finding no genuine issue of material fact as to whether the defendants were deliberately indifferent to the plaintiff's serious medical needs after he contracted tuberculosis and Pott's disease. Id. at *1. The court noted that Dr. Dhaliwal evaluated the plaintiff's symptoms, adjusted his treatment according to the plaintiff's feedback, prescribed new medications and modified his dosages, and ordered several tests in an effort to properly diagnose the source of his pain. Id. at *2. Although the court noted that Dr. Dhaliwal's failure to order a more timely MRI may arguably constitute negligence, no reasonable jury could conclude that he was deliberately indifferent to the plaintiff's needs given the amount of medical care provided and his responsiveness to the plaintiff's pain. Id.

The Court finds the instant case distinguishable from Bennett. While in Bennett Dr. Dhaliwal ordered several tests in an effort to properly diagnose the prisoner's illness, here he requested only a dermatologist consultation that was not fulfilled for 10 months. App'x, Ex. 1 at 27; Conlogue Decl., Ex. 17. When this consultation was finally performed, approximately one month before plaintiff's leg was amputated, Dr. Van Meter found erythematous macules on plaintiff's right foot and lower leg, App'x, Ex. 1 at 99, which are consistent with extremely ischemic and possibly gangrenous tissue according to Dr. Gradman, Conlogue Decl., Ex. A at 30. In addition, while the court in Bennett found that Dr. Dhaliwal was responsive to the patient's pain, here, plaintiff asserts that he repeatedly complained to Dr. Dhaliwal that he had leg and foot pain that made it difficult for him to walk, but Dr. Dhaliwal ignored his complaints and told him it was not an emergency. Hernandez-Rojas Decl. ¶ 5. Accordingly, the Court cannot say as a matter of law that Dr. Dhaliwal was not deliberately indifferent to plaintiff's serious medical needs.

Defendants' motion for summary judgment as to plaintiff's claim against Dr. Dhaliwal therefore **DENIED**.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:13-cv-00669-CAS(JCx) | Date | January 8, 2017 |
| Title | MARCELO HERNANDEZ-ROJAS v. M. K. PINNELL, ET AL. | | |

### 2. Salcido

Defendants argue that because Salcido treated plaintiff extensively, plaintiff cannot demonstrate that he was deliberately indifferent to plaintiff's medical needs. Mot. at 4–5. Defendants indicate that the following facts remain undisputed: Salcido saw plaintiff at least 10 times at sick call, examined plaintiff's legs and diagnosed varicose veins, renewed or changed plaintiff's pain medications, advised plaintiff not to stand for prolonged periods of time, elevate his legs, and wear compression stockings, and offered plaintiff a diabetic boot. Reply at 4–5. However, as with Dr. Dhaliwal, the Court finds that based on the evidence submitted here and drawing all reasonable inferences in plaintiff's favor, it cannot be said that Salcido did not exhibit deliberate indifference as a matter of law.

Plaintiff states that throughout March 2012 Salcido repeatedly refused to treat him at sick call and would turn him away even though plaintiff was complaining of extreme leg and foot pain that was making it difficult for him to walk. Hernandez-Rojas Decl. ¶ 7. On April 22, 2012, plaintiff filed an administrative remedy request, indicating that he has "been to sick call many times without any results," that he was in "daily pain" and receiving no medical help. App'x, Ex. 43. According to plaintiff, Salcido continued to refuse to treat him, and on July 6, 2012 a guard had to force Salcido to examine plaintiff. Hernandez-Rojas Decl. ¶ 11. Salcido reported arterial pulses of "+5" in plaintiff's legs and recommended elevation, wearing compression socks, and avoiding prolonged standing, but denied plaintiff's request for a lower bunk. Conlogue Decl., Ex. 78. As plaintiff's condition worsened in August 2012, he states that Salcido continued to refuse to examine his injuries. Hernandez-Rojas Decl. ¶ 13. Salcido also generated a record on October 22, 2012, indicating that plaintiff had PVD, and accordingly a jury could reasonably infer that Salcido was aware of plaintiff's serious medical need. Conlogue Decl., Ex. 88.

Dr. Gradman opined that Salcido was "incompetent," failed to perform proper examinations, and his conduct fell below the standard of care. Id., Ex. A at 38. Specifically, Dr. Gradman notes serious flaws in the July 6, 2012 examination. For example, Salcido's finding that plaintiff had arterial pulses of "+5" is off the scale; and the presence of very strong pulses is doubtful given the PVD diagnosis. Dr. Gradman opines that either Salcido did not perform the examination, performed it improperly, or was not properly trained. Moreover, Salcido's recommendation that plaintiff elevate his legs and wear compression socks would have only increased his pain and constricted the flow of blood to his legs. Conlogue Decl., Ex. 200 at 10. See Ortiz, 884 F.2d at 1314

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:13-cv-00669-CAS(JCx) | Date | January 8, 2017 |
| Title | MARCELO HERNANDEZ-ROJAS v. M. K. PINNELL, ET AL. | | |

(prison medical officials' prescription of contraindicated medications where officials knew about the plaintiff's serious medical need precluded finding a lack of deliberate indifference as a matter of law). Accordingly, the Court finds that plaintiff has established a triable issue of material fact as to whether Salcido's conduct constituted deliberate indifference to his medical needs.

Defendants' motion for summary judgment as to plaintiff's claim against Salcido is **DENIED**.

### 3. Dr. Patel

Defendants argue it remains undisputed that Dr. Patel, as FCI Lompoc's Health Services Administrator, did not treat any inmates, approve or deny requests for consultations, render any medical opinions, or make any determinations about which specialists should see an inmate. Mot. at 22. Defendants indicate that Dr. Patel cannot be held vicariously liable for the conduct of other prison medical officers, see Iqbal, 556 U.S. at 676, and argue that plaintiff has failed to establish a genuine issue of material fact as to whether Dr. Patel was himself deliberately indifferent to plaintiff's medical needs. Reply at 6–7.

To the extent plaintiff is asserting Dr. Patel is liable based on his supervisory role, an Eighth Amendment violation cannot be established. However, plaintiff has presented evidence from which a jury could reasonably find deliberate indifference on the part of Dr. Patel. First, Dr. Patel was aware that plaintiff had been visiting sick call on a near-daily basis seeking treatment for his pain and had to repeatedly ask Salcido to attend to plaintiff. Conlogue Decl., Ex. F at 33. Second, Dr. Patel reviewed and responded to plaintiff's request for an administrative remedy in which plaintiff complained that he had "been to sick call many times without any results," that he was in "daily pain" and receiving no medical help. Conlogue Decl., Ex. 43. Dr. Patel responded that plaintiff's "medical needs are being addressed" because a dermatologist consultation had been ordered and he was receiving pain medication. Id., Ex. 44, Ex. F at 67. Finally, plaintiff states that Dr. Sinkaset told Dr. Patel on October 25, 2012 that plaintiff needed to see a vascular surgeon right away because of the ulcers on his feet, but Dr. Patel responded that it was not an emergency. Hernandez-Rojas Decl. ¶ 15.

Viewing this evidence and drawing all reasonable inferences in plaintiff's favor, Dr. Patel's role was not limited solely to supervisory or administrative functions, but rather he was personally involved in aspects of decision-making regarding plaintiff's medical care. Although Dr. Patel frequently accompanied plaintiff to health services,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:13-cv-00669-CAS(JCx) | Date | January 8, 2017 |
| Title | MARCELO HERNANDEZ-ROJAS v. M. K. PINNELL, ET AL. | | |

there is no evidence that he took any affirmative action to ensure that plaintiff received adequate medical treatment from Salcido and Dr. Dhaliwal. And when plaintiff ultimately was examined by Dr. Sinkaset, who recognized that he needed to see a vascular surgeon urgently, Dr. Patel did not consider the situation an emergency. The Court finds that plaintiff has presented a triable issue of material fact as to whether Dr. Patel was deliberately indifferent to plaintiff's serious medical needs.

Accordingly, defendant's motion for summary judgment as to plaintiff's claim against Dr. Patel is **DENIED**.

### 4. Pinnell

Plaintiff contends that Nurse Pinnell was deliberately indifferent to his medical needs because she wrote him up for disobeying an order, malingering, and lying on July 23, 2012 when plaintiff was unable to walk and suffering from severe leg and foot pain. Opp'n at 23. In addition, plaintiff states that Pinnell would get angry at him all the time at sick call, Hernandez-Rojas Decl. ¶ 24; and Dr. Patel testified that he witnessed Pinnell yelling at plaintiff at sick call on more than one occasion when he would bypass the usual procedures and seek medical attention. Conlogue Decl., Ex. F at 91. Thus, plaintiff argues that Pinnell exhibited deliberate indifference by intentionally interfering with his treatment. Opp'n at 23.

Defendants argue that Pinnell's disciplinary actions, standing alone, are insufficient and cannot establish deliberate indifference as a matter of law. Reply at 5–6 (citing Montoya v. Cash, No. ED CV 18-580-JVS DFM, 2013 WL 5522900, at *4 (C.D. Cal. Oct. 2, 2013) (dismissing deliberate indifference claim because "even if [the doctor] thought Plaintiff was malingering and was incorrect in his assessment, these facts, without more, do not state a claim of deliberate indifference.")). Defendants also argue that there is no factual basis for the claim that Pinnell was deliberately indifferent because a finding that a defendant's neglect of a prisoner's condition was an "isolated occurrence," Wood, 900 F.2d at 1334, or an "isolated exception," Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986), to the defendant's overall treatment of the prisoner ordinarily militates against a finding of deliberate indifference. Reply at 5–6.

Contrary to defendants' characterization of Pinnell's conduct as an isolated occurrence, the evidence indicates that she was consistently hostile to plaintiff when he sought medical help for his severe and debilitating pain over a period of many months. Viewing the evidence in the light most favorable to plaintiff, the Court cannot say that Pinnell did not exhibit deliberate indifference to his medical needs as a matter of law.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:13-cv-00669-CAS(JCx) | Date | January 8, 2017 |
|---|---|---|---|
| Title | MARCELO HERNANDEZ-ROJAS v. M. K. PINNELL, ET AL. | | |

Accordingly, defendants' motion for summary judgment as to plaintiff's claim against Pinnell is **DENIED**.

### 5. Colcol

Plaintiff contends that Colcol was deliberately indifferent to his medical needs because he supervised Salcido, saw plaintiff on a daily basis at sick call, and knew about plaintiff's repeated requests to see an outside specialist, yet did nothing. Opp. at 23; Conlogue Decl., Ex. D at 52, Ex. F at 34. Plaintiff also states that when he requested medical shoes, a cane, and a wheelchair, Colcol responded that "if you push Colcol, Colcol don't do sh*t." Hernandez-Rojas Decl. ¶ 22. Defendants contend that this statement, standing alone, does not constitute deliberate indifference. Reply at 7. Defendants further argue that plaintiff has not shown Colcol was aware of plaintiff's serious medical condition because he did not examine or treat plaintiff. Id. at 8. Defendants cite Bennett, 2017 WL 6014232, at *1–2, where the Ninth Circuit affirmed the district court's grant of summary judgment because there was no evidence that various prison medical officials had actual knowledge of the plaintiff's serious medical needs.

Like Dr. Patel, however, the evidence viewed in a light most favorable to plaintiff supports a reasonable inference that Colcol was involved in decision-making regarding plaintiff's medical care. A jury could also reasonably conclude that Colcol consciously disregarded plaintiff's serious medical needs based on circumstantial evidence, such as plaintiff's PVD diagnosis and his deteriorating medical condition. See Lolli, 351 F.3d at 421. Accordingly, the Court cannot find, as a matter of law, that Colcol's conduct did not amount to deliberate indifference to plaintiff's serious medical needs. Defendant's motion for summary judgment as to plaintiff's claim against Colcol is therefore **DENIED**.

### 6. Hawley

Plaintiff contends that Nurse Hawley was deliberately indifferent to his serious medical needs because she was always mad and angry at him for coming into sick call. Opp'n at 23, Hernandez-Rojas Decl. ¶ 23. Plaintiff states that Hawley placed him in segregation after he was written up by Pinnell and Salcido on July 23, 2012. Id. Dr. Patel also testified that he saw Hawley yelling at plaintiff. Conlogue Decl., Ex. F at 91. In addition, plaintiff states that during a medical exam on October 25, 2012, Dr. Sinkaset made Hawley feel that there was no pulse in plaintiff's leg, but Hawley refused to admit there was no pulse. Hernandez-Rojas Decl. ¶ 15. For the same reasons explained with

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:13-cv-00669-CAS(JCx) | Date | January 8, 2017 |
| Title | MARCELO HERNANDEZ-ROJAS v. M. K. PINNELL, ET AL. | | |

respect to Pinnell, the Court finds that plaintiff has presented a triable issue of fact as to whether Hawley's conduct manifested deliberate indifference to plaintiff's serious medical needs. Accordingly, defendants' motion for summary judgment as to plaintiff's claim against Hawley is **DENIED**.

### 7. Dr. Warren-Phillips

Finally, plaintiff argues that Dr. Warren-Phillips, a psychiatrist who evaluated plaintiff on March 22 and August 31, 2012, exhibited deliberate indifference by refusing to accompany plaintiff to sick call to ensure that he received proper care. Opp'n at 24; Hernandez-Rojas Decl. ¶ 25. However, it is undisputed Dr. Warren-Phillips was not involved in treating plaintiff's physical illnesses; and when plaintiff complained about leg pain, she referred him to Dr. Dhaliwal for treatment. App'x, Ex. 1 at 84. Even viewing these facts in a light most favorable to plaintiff and drawing all reasonable inferences in his favor, the conduct of Dr. Warren-Phillips does not demonstrate deliberate indifference to his medical needs. Accordingly, defendants' motion for summary judgment as to plaintiff's claim against Dr. Warren-Phillips is **GRANTED**.

### C. Qualified Immunity

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009). By way of a motion for summary judgment, defendants are only entitled to qualified immunity if (1) the evidence submitted, viewed in the light most favorable to the plaintiff, shows that the defendants' conduct did not violate a constitutional right; or (2), if it did, that the scope of that right was not clearly established in the context of the specific facts of the case. See Saucier v. Katz, 533 U.S. 194, 201 (2001). The Court has discretion to decide which of the two prongs to consider first. Pearson, 555 U.S. at 236–37. The Ninth Circuit has previously held that "[i]f a genuine issue of fact exists preventing a determination of qualified immunity at summary judgment, the case must proceed to trial." Act Up!/Portland v. Bagley, 988 F.2d 868, 873 (9th Cir. 1993). Because the Court finds that plaintiff has presented a genuine issue of material fact as to whether Dr. Dhaliwal, Salcido, Dr. Patel, Pinnell, Colcol, and Hawley were deliberately indifferent to plaintiff's serious medical needs in violation of the Eighth Amendment, a finding on the issue of qualified immunity is premature at this stage. Accordingly, defendants' motion for summary judgment on qualified immunity grounds is **DENIED**.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:13-cv-00669-CAS(JCx) | Date | January 8, 2017 |
|---|---|---|---|
| Title | MARCELO HERNANDEZ-ROJAS v. M. K. PINNELL, ET AL. | | |

## V.  CONCLUSION

In accordance with the foregoing, the Court **GRANTS** defendants' motion for summary judgment in part and **DENIES** the motion in part.  Specifically, the motion is **GRANTED** solely with respect to plaintiff's Bivens claim against Dr. Warren-Phillips. The motion is **DENIED** as to plaintiff's Bivens claim against Dr. Dhaliwal, Salcido, Dr. Patel, Pinnell, Colcol, and Hawley.

**IT IS SO ORDERED**.

00 : 17

Initials of Preparer  CMJ